# LEONCIA ORTIZ, Plff.,

## *v.*

# BULL-INSULAR LINE, Dft.

San Juan, Law, No. 1122.

THE COURT'S INSTRUCTIONS TO THE JURY.

Negligence—Unavoidable Accident.

1. A plaintiff cannot recover if the evidence shows that the accident was not caused by the defendant's negligence, but was unavoidable.

Negligence—Measure of Damages.

2. Section 61 of the Code of Civil Procedure of Porto Rico, which provides that "such damages may be given as under all the circumstances of the case may be just," does not prescribe any new rule of damages, and must therefore be construed in connection with § 1803 of the Civil Code of Porto Rico, which provides for compensatory damages only.

Negligence—Measure of Damages—Expectancy of Life.

3. In an action by a mother for the death of her son, the measure of damages is the loss of support. The mortuary tables of insurance companies refer only to people in good health, and if a person's health is such as not to meet the requirements of the insurance companies the mortuary tables do not control. In such circumstance the jury must determine the expectancy of life.

---

NOTE.—On right of parent to recover damages for negligent killing of minor child, see note in 17 L.R.A. 79.

For authorities discussing the question of assumption of risk of minor employee, see note in 1 L.R.A. (N.S.) 279.

For a discussion of the question as to what persons are deemed to be independent contractors within the meaning of rule relieving employer from liability, see notes in 65 L.R.A. 445, and 17 L.R.A. (N.S.) 371.

On the question as to who are fellow servants on vessels, see note in 50 L.R.A. 460.

### Ortiz v. Bull-Insular Line.

Negligence—Married Woman—Right to Support.

    4. The fact that decedent's mother is married and is supported by her husband does not deprive her of her right to receive support from her son.

Negligence of Agent.

    5. An agent is bound to execute his duties with ordinary care, and is answerable to anyone who may be injured by his negligence.

Negligence—Assumption of Risk.

    6. Every person assumes the risks of his employment if he undertakes it with knowledge of the risks.

Negligence—Fellow-Servant Rule.

    7. Where a winchman was working on the deck of a vessel and the injured man was working in the hold, so that they were in different branches of employment, the rule of fellow servant does not apply.

Negligence—Independent Contractor.

    8. A stevedore who undertakes contracts for the loading and unloading of vessels as a business in itself is an independent contractor, and the person with whom he contracts to do the loading or unloading is not answerable for his negligence.

Negligence—Selection of Agent—Responsibility of Principal.

    9. A steamship company which employs as stevedore a man of experience as such, and who is recognized in the community as a capable stevedore, has used the care which "a good father of a family," prescribed by § 1804 of the Civil Code of Porto Rico would have used, and is not responsible for his negligence.

Opinion filed January 4, 1917.

———

*Mr. H. R. Francis* for plaintiff.

*Mr. F. H. Dexter* for defendant.

HAMILTON, Judge, delivered the following opinion:

We have now reached the end of the evidence of this very

Ortiz v. Bull-Insular Line.

interesting case, and it will now be left in your hands for decision. Before you retire and select your foreman and bring in your verdict, it is my duty to try to throw some light upon the law of the case. In so far as I mention facts, it will be incidental. If I state a fact wrong, you will mentally correct me. I have no wish to tell you what the facts are. It is not my duty, and it is not my right except to a very limited extent.

To begin with, of course you will recollect that there are two or three points common to all cases. This is a suit by a mother against the Bull-Insular Line, claiming that that company is responsible for the death of her son Ortiz on August 5, 1915, at least, that that was the time of the accident. The plaintiff has to prove her case. No plaintiff can come into this court and ask the court and jury to guess a verdict in his or her favor. I am not saying, of course, that that was done in this case, but I want to impress upon you that the plaintiff must prove her case. If she leaves your minds in doubt as to what was the fact on any material point in the case, she will not be entitled to recover, because if your minds are left in doubt you can readily see that you cannot say that the plaintiff has carried the burden which rests upon every plaintiff.

Another thing, there have been a number of witnesses. It has taken two days to try the case. The very object of having a jury is to have twelve men from the business walks of life and of all walks of life who know how to judge men on the stand. The judge of this court might or might not be able to do so with the same facility that you can. You come from all the walks of life. You have seen these men and have heard them testify. You know a number of them. You can tell better than I can how much stress to lay upon the testimony of this witness or

Ortiz v. Bull-Insular Line.

that witness, or, where they conflict, which is probably stating the facts. Then of course you must recall that ordinarily people tell the truth, and where they conflict it does not necessarily mean that they are lying. You are to take into account which of them has the best means of obtaining knowledge, just as you would in your business. There are those two or three remarks to make that belong to any case.

To take up the case at bar, let us see what it is the plaintiff has to prove. The plaintiff alleges that on August 5, 1915, her son was employed by the defendant, the Bull-Insular Line, to help unload a certain vessel, I believe the name was Honorius, lying at anchor out in the harbor. She claims that the man, who seems to have been a robust fellow and good workman, went out there and received the tag that is usual in such case, and was set to work, I think about 1 o'clock in the day. The work had been going on all day, and he was called in when it was about half over, as I recall the facts. That he worked there for about four or five hours. That the man in charge of the work was Hernandez,—Doreteo, I belive they called him. That he was the capataz in charge of the work. He stayed for some time, the most of the time perhaps, on the upper deck, where he could give instructions to the winchmen as to lowering or raising the sling which took up the fertilizer out of the hold, and where at the same time he could look down into the hold and see how the work was going on there. It seems to me to be undisputed that this vessel was, so far as we are concerned at present, loaded with fertilizer which came from South America. Part of the cargo was consigned to cities in the North, Boston I think was one and perhaps Baltimore, and part here to San Juan. That the way in which this vessel was loaded was not unusual in for-

Ortiz v. Bull-Insular Line.

eign vessels. If I understand the testimony correctly,—and you will correct me if I am wrong,—these bags of fertilizer were loaded on this vessel, and on most foreign vessels, across the boat so that when you took out a section they were left lengthwise to the open space. That ordinarily in American vessels such bags are loaded the other way, lengthwise with the vessel, so that the small end of the bag is exposed when you take out a portion. That is my recollection of the testimony,—you will recollect better whether it is correct or not. The plaintiff contends that that being so, there was a greater liability for the bags remaining, after a certain amount had been taken out, to topple over, exposed sideways instead of on the ends. . That the capataz in question, Doroteo, was well informed upon the way of loading vessels in general, foreign vessels and American vessels; had been in the business for many years, if I recollect correctly, for pretty much all the time that the Bull-Insular Line had been in business here. That also the son,—that is, the man now dead,— was well informed on the same subject; that is to say, had worked on American vessels and foreign vessels. So that in this particular they would seem to have been pretty much on a par, although Doroteo may have been in the business longer. So far there is not a great deal of dispute. It seems that in unloading the vessel the winch would let the sling down into the hold, where several bags would be wrapped together in the sling and then pulled up,—the ordinary way of doing, as I understand it. The sea was calm. There was no motion of the vessel, so far as the evidence shows, and whatever motion there was to the sling was due to the ordinary mechanical use of the sling. A sling does not go straight up and down like a well rope. It varies, and it is bound to swing a little and bump against the sides of the

hatch and the cargo still remaining in the hold. There seems to be a difference between the witnesses as to how often the sling struck against the bags that were left. Some of the witnesses say that it was repeated so long that the inference sought to be drawn by plaintiff is that it weakened the upper tiers of the bags, with the result that ultimately they fell over and drew others with them until some sixty or seventy bags fell over. The plaintiff's son was down in the hold performing his duties at the time. This was towards the last, and it may have been that it was the hides, which were taken away in order to allow the unloading, which were going up or down when the bags of fertilizer fell. At all events, the son who is now dead was working down on the floor of the hold, and these bags fell over on him and crushed out his life.

These are substantially the facts. I do not think they are disputed greatly except as to the number of times that these bags or these hides, whichever it was, bumped against the other bags. As I recall the testimony of some of the witnesses, they said this happened only once or twice or a few times, and others said it was repeatedly. That may or may not be an important matter for you to consider.

1. The question now arises,—and of course it is the important question in the case,—Who is responsible for the death of this boy? There are several ways of looking at it. If evidence has not been brought before you satisfactorily showing that the defendant is responsible, so far as this case is concerned you will have to find for the defendant. If the evidence does not satisfy you that the defendant was liable for it, of course the defendant had nothing to do with it. They would either have to seek some other one who was responsible or come to the con-

Ortiz v. Bull-Insular Line.

clusion that the facts were such, as some of the witnesses stated, that they could not tell what caused the bags to fall. If you should find from the evidence that this fall was something inexplicable, something that might happen once in a great while and just did happen this time without any traceable cause, you would have to find for the defendant, because that would be an inevitable accident. You could hardly call it an act of God, but an accident whose cause cannot now, from what we know of the case, be traced. If that is so, I say you would find for the defendant. If, on the other hand, you think that this was due to the haste or the negligence of this capataz in charge, then arise the other questions in the case. Then we have to go further. If you think there was negligence on the part of the capataz, the questions is, Is that negligence to be charged against this defendant?

2. There are several things to be taken into account. Let me mention the question of damages first, because that is shorter and is easier to solve. If negligence is shown on the part of the defendant, then you will allow damages, and not otherwise. Just assuming for the moment that there is negligence, what about damages? This action is brought under § 61 of the Code of Civil Procedure of Porto Rico, and is taken from American sources. It is different from the Civil Code. The Civil Code is the substantive law between man and man. That comes from Spain. The Code of Civil Procedure, which prescribes how you get a case into court and what you do after you get it there, is governed by a different Code, which is taken from the western states, and in that they have put some things which might properly belong in the Civil Code. One of them is this § 61. "When the death of a person, not being a minor, is caused by the wrong-

ful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death." That would be the capataz if this stood alone. That is not this case. "Against the person causing the death, or, if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just." As to the responsibility of the capataz, I will discuss that under the question of negligence, but as to how much damages, suppose anything is allowed, you will observe this is very indefinite. "Such damages may be given as under all the circumstances of the case may be just." That does not prescribe any new rule of damages. It must be taken in connection with the substantive law of the land. It must be construed in connection, I think, with § 1803, and the construction to be given to that as to negligence and damages. This is a negligence case. It is simply provided for by a separate section from that governing ordinary cases of negligence. The general rule in Porto Rico is that damages must be compensatory, as the expression goes. That where there is anything to be allowed at all to a plaintiff it is to compensate him for what he has lost, not something fancy, not something that you might imagine into a case at all, but to put him back where he was before the accident occurred, as well as you can, according to the proof of the case.

3. That brings up the question then, what damage has this plaintiff, the mother, suffered? You are not to take into account her suffering as a mother. Those feelings that are common to us all, and that affect a mother or a son or a daughter,

do not enter into this case. It is compensation for what she has lost in the way of support. That is all. What is the evidence on that point? If I recall the evidence right, it is that this boy was earning good wages. I do not know how much a month, but the evidence is that on some occasions he sent to his mother $5 every two weeks, say $2½ so as to get a measure. It is for you to say from the evidence whether you believe that this was continuous, whether he sent that regularly. If he did, that amounts to one hundred and some odd dollars a year. That is one thing. Now for how long a period could you allow it? The evidence as to this woman's health is that she is feeble,— "delicate," I think the expression was. The mortuary tables, as they are called, which are used by life insurance companies, would allow her an expectancy of some sixteen and a half years, but that is for well people, that is for you or for me if we at fifty-five years of age wanted to get out some insurance. And if a person is not in such a condition that he could be insured, those tables do not control at all. You will have to make up under those circumstances, if you think she is in delicate health, an expectancy of her own. I do not think she was put upon the stand, so you cannot judge from looking at her, but you will have to make up your mind from what was testified what would be her expectancy,—not *the* expectancy, but what *hers* was. You may think it was a year or five years or ten years. But if she would have gotten $100 a year, then it would be $100 multiplied by whatever length of time you find she would live, with this to be remembered: Your allowance is to be in the present, and suppose you said she was to live ten years,—just for illustration simply,—you would have to say what $100 would be worth now with ten years' interest taken off. That would be

a very different proposition from multiplying 100 by 10. It is a matter that you have to multiply out for yourselves. I am not saying anything about ten years or one year or six months. That is a matter for you to determine; that is, if he was contributing that to her regularly. If your conclusion from the evidence is that he simply gave her something once in a while on her birthday or for Christmas or something like that, just on special occasions, if it was a gift and not a support, she would not be entitled to anything. One has no vested right in possible gifts. So, you will have to bear that distinction in mind, whether you think the evidence proves that she was being supported by him to a certain extent.

4. I charge you that the fact that she was married is not important in this case. If a mother has a husband, second husband or any husband for that matter, who himself is not able to support or does not support her, for that matter whether he does or not, it is the duty of the son in Porto Rico or in Alabama, where I came from, or in China I reckon, to support her. No one has a greater claim upon a son than the woman who bore him, not even his own children; so, the fact that she got something from her husband would not be conclusive if you find that he was not able to give her full support. I think you will find on reflection that these three or four elements going into the question of damages will make it somewhat complicated to figure out; but that will simply mean that I am glad that you have to figure it, and not myself.

5. As to the question of negligence, the great or primary question is the question of responsibility. You observe § 61 says that you can find against the defendant, the Bull-Insular Line, only if the Bull-Insular Line is responsible for the acts

of this capataz. I am putting in the names, but that is what § 61 means. Was the Bull-Insular Line liable for the acts of this capataz? In the first place you have to find out whether the capataz was guilty of negligence himself. If it was an unavoidable accident, he was not liable at all, but if he was liable at all under all the circumstances, that is not all the case. He is not the defendant. They are suing the Bull-Insular Line. What is the duty of the Bull-Insular Line under these circumstances? I think there is no question in the case that the Bull-Insular Line did not own this boat, that they did not even charter it, that they had nothing to do with the loading of the boat in Buenos Aires or wherever it came from. They received a cable and a letter asking them to take charge of the San Juan cargo, and see to its unloading here. That was all that the Bull-Insular Line had to do with it, and their liability is limited like that of any agent. The law of agency here, which is found in § 1628 of the Civil Code, and which would be the law in the states without it being in the Code, is this,—an agent is bound to exercise his duties with proper care, ordinary business care. An agent cannot safely be negligent any more than the principal can be negligent. So, the fact that the Bull-Insular Line did not own this boat does not control the case at all, nor the fact that they did not load the boat. That is not the question. The question is this, Did they exercise the care that an agent ought to have exercised, through a capataz or otherwise, in unloading a boat that was consigned to them? So fix your minds upon that. Did they unload it properly? Of course the president and the general manager did not go out there and unload it. That is not the point. But did they exercise the duty of selecting a proper man, etc., who did actually unload it?

IX. Porto Rico.—22.

6. There are several defenses set up, several points which I want to call your attention to. Even if the Bull-Insular Line was liable for all the negligence you may suppose, it would be a proper defense in this case that the deceased assumed this particular risk. Anybody assumes the ordinary risks of a business that he goes into. You in this jury box assume the ordinary risks connected with the position. If that fan should accidentally tumble down on you, and nobody is liable for it, you assume that risk. This man had been in that business for a long time. He had unloaded this kind of a vessel; that is, a vessel loaded with the sacks in a certain way. If he knew that, and there was any risk connected with that which anyone could see, if he could "appreciate" the risk,—a good word in Spanish but not so good in English,—if it was something that was visible or tangible or hearable or any other way that he could get at by his ordinary senses, he assumed that risk, but if it was not he did not assume it. An employer, whether it be a capataz or a steamship line, must furnish an ordinarily safe place to work. So the defense of assumption of risk must be looked at in that light.

7. Evidence has been brought, and the question has been raised, suppose those sacks were knocked down by the winchman,—I do not say they were at all, but suppose they were,— the question might arise and has been argued as to whether the plaintiff could recover. Was the winchman a fellow servant, as they call it, with the fellow working down in the hold? I charge you that there is no evidence of a fellow servant in this case, and I remove this question from your consideration. I will give you the reason for it, although it is not necessary to do so. The winchman was working up on deck, and could not

Ortiz v. Bull-Insular Line.

see the man down in the hold, and the man down in the hold could not see what the winchman was doing. One was running a winch and the other unstacking some sacks, and they were not working together. They were under a common foreman perhaps, but they were in different branches of the employment, and I charge you that you could not consider the question of fellow servant at all.

8. Again, it is sought to be shown in this case that the capataz was what is called an independent contractor. I charge you that if that is so, it is a good defense. That is to say, the Bull-Insular Line has a right to farm, to sublet, so to speak, the unloading of a vessel, under certain conditions of course, to somebody who is in that line of business. Just for example, suppose that there is, as there may be for all I know,—as there is in many ports,—a stevedoring company which takes contracts of loading or unloading vessels as a business in itself. That is a contract, and anybody who employs such a concern is employing an independent contractor, because it is a special business requiring special knowledge, etc. If the facts in this case show to your mind that this man Doroteo was in that line of business and was employed in this case by the Bull-Insular Line to do this for them, he would be an independent contractor. But if he was employed by the Bull-Insular Line to go out and unload a vessel for them, not for the company up yonder, and he acted under employment from them in carrying out their special or general instructions, he would be their capataz, he would be their agent, and they would be responsible for any negligence of his, if he was guilty of negligence. All the time I am trying to have you bear in mind that I am not assuming that he was negligent. I am simply passing from one phase of the case to another.

9. There is one very important element in this case which is different from that of an independent contractor even, and it is this. The Spanish Law, § 1804, says that a man or a company, or the Bull-Insular Line to bring it down to this particular case, is responsible not only for what it does itself, but for the acts of its employees if the employees are negligent, with this qualification, and it is one that you will have to consider in this case. The Spanish law is very interesting in many respects and in some respects it is much more just than the common law of the states. It has many expressions which strike one coming from the states, and it impresses one deeply. The limitation in this class of cases is this, that responsibility for an agent—and the most you can assume is that Doroteo was an agent of the Bull-Insular Line—is limited by this: That if the Bull-Insular Line employed and sent out there a man who was an experienced stevedore, unloader, a man who stands well in the community and has stood well in the community as a master or capataz, as is the expression, of that particular line of business; if that was his reputation and that had been their experience with him in the past, then the Bull-Insular Line was, to use the quaint Spanish expression, using the care which is exercised by a "good father of a family." It is a queer expression, which did not originally belong to business, but if they exercised the care that they would have taken,—to put it strongly if they exercised the care that they would have exercised in selecting this man, if Mr. Such had a son who was working there as an employee,—that would be the care of a good father of a family. It is not necessary to go that far, but that will give you the idea. If they exercised in the selection of this capataz the care that a good

business man would in looking out for the interests of his employees, then they are not responsible.

There are those different defenses or phases of defense which you must take into account. Any one, if proved to your satisfaction, is fatal to the plaintiff's case. The plaintiff has to prove to your satisfaction, not beyond a reasonable doubt, but by a preponderance of the evidence, that the capataz in this case was negligent to start with, which you have to find out, and that if there was negligence, that it was the kind of negligence that the defendant, the Bull-Insular Line, was responsible for, and that there were not the intervening questions of assumption of risk and the others that I have mentioned to you.

I have been asked to give certain charges. A number of them I will not read because they have been expressed in the general charge.

You are instructed that neither the Bull-Insular Line nor Doroteo Hernandez insured absolutely the safety of Maximino Ortiz in the performance of the work for which he was employed. The law imposed upon the latter the duty of exercising ordinary care to prevent accident, and made him also subject to such risks as are ordinarily incident to such employment. Therefore, if you believe that Maximino Ortiz had experience as a stevedore in the discharge of the cargo, and if you believe from the evidence that in the course of the business of this port ships arrive from foreign ports with cargoes of sacks of material piled in tiers of one on top of another, as in the case of the steamer Honorius, and that stevedores of this port in their ordinary experience are called upon to work in the discharge of cargo so arranged, then you are instructed that the liability of such cargo to fall, if under the evidence you believe there was

such liability, is one of the ordinary risks incident to the employment of Maximino Ortiz.

You are instructed that the defendant cannot be held responsible for the manner in which the cargo in the ship Honorius was piled before reaching Porto Rico. If, therefore, you believe that the accident resulted from the improper and negligent piling of the cargo before it reached Porto Rico, defendant would not be liable for the accident.

I gave Nos. 14 and 15 in effect.

Even though you should believe that Doroteo was not an independent contractor, in order to find for plaintiff you must find from a preponderance of the evidence that the accident resulted from the relation of defendant to the work, and from the intervention of defendant in the manner of the performance of the same and the control over the deceased Maximino Ortiz, either directly or through the capataz.

Negligence is the failure to use the ordinary care or prudence of the average man under the circumstances.

A corporation can only act through its agents or employees, and therefore the negligence of an agent or an employee of a corporation in the scope of his duty is the negligence of the corporation.

Negligence may consist in acts of omission as well as in acts of commission.

If you find that Doroteo Hernandez was an employee or agent of the defendant company, then any negligence on his part is the negligence of the defendant.

Are there any exceptions?

Mr. Francis: I would like to have an exception to those instructions requested by the plaintiff and not given, and also to

Ortiz v. Bull-Insular Line.

your Honor's instructions to the jury as to the interpretation of § 1804 of the Civil Code.

Mr. Dexter: The defendant will take a formal exception to the failure to give certain instructions and the modification of others requested by it. And also to giving the instructions requested by the plaintiff and which were read by the court. And also to the following portions of your Honor's charge: Such damages may be given as under all the circumstances may be just. The law of Porto Rico, § 61, does not provide any limitations upon the amount to be recovered. Damages in Porto Rico are compensatory. The question to determine is, Did they, referring to defendant, unload the boat properly? Also that part: I charge you that there is no evidence of a fellow servant in this case. I remove this question from your consideration. Also to the language: If you find that Doroteo Hernandez was the agent or employee of the defendant, then his negligence was the negligence of the defendant. In connection with this matter I would ask your Honor to qualify this last so as to read: If you find that Doroteo was the agent or employee of defendant under its control. In other words, if he was an independent contractor he would not be an agent.

The Court: I think, taken in connection with the whole charge, it is clear.

Mr. Dexter: Note an exception.

Mr. Francis: The plaintiff would like to note his exceptions to the granting of the instructions requested by the defendant.

You will now retire in charge of the marshal, and elect a foreman, and bring in one of these two verdicts: We, the jury, find for the plaintiff and assess her damages in the sum of $————, signed by your foreman. Or, we, the jury, find for the defendant, signed by your foreman. You will now retire.